UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID BUCK,<br><br>                Plaintiff,<br><br>   v.<br><br>THYCOTIC SOFTWARE, LLC,<br><br>                Defendant. | No. 2:20-cv-01721-BJR<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. **INTRODUCTION**

Plaintiff David Buck ("Plaintiff" or "Buck") filed this lawsuit against Thycotic Software, LLC ("Defendant" or "Thycotic"), asserting claims of retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a), and the Washington Law Against Discrimination ("WLAD"), RCW § 49.60.210(1), arising from the termination of his employment with Thycotic. Plaintiff also asserts a claim for breach of contract arising from the same events. Presently before the Court is Defendant's motion for summary judgment on all of Plaintiff's claims ("Motion" or "Mot.," Dkt. 20). Having reviewed the Motion, the record of the case, and the relevant legal authorities, the Court GRANTS in part and DENIES in part the Motion. The reasoning for the Court's decision follows.

ORDER - 1

## II.     BACKGROUND

### A.     Factual Background

Buck had been employed by Thycotic, a cyber security software company, as a technical writer beginning in April 2019. Michelle Hayes Declaration ("Hayes Decl.," Dkt. 22) ¶¶ 2-3. In November 2019, a dispute arose between Buck's colleagues, Heather Fazio and Will Sprunk, as to Sprunk's covering of certain work for Fazio while she was on paid time off. *See, e.g.*, Fazio Dep. Tr. at 36:8-16. Upon Fazio's return to work, Sprunk wrote her an email on November 12 criticizing the work she had left him to complete. Sarah Macklin Declaration ("Macklin Decl.," Dkt. 21), Ex. B. He wrote, among other things: "I'm not sure what the disconnect was, but the [document] was nowhere near ready to be published …. My understanding was that I was going to deal with any last-minute changes …. I wound up having to do a lot more …." *Id.* at 3-4.

On November 14, after having argued with Sprunk over email about his criticism (*see* Macklin Decl., Ex. B at 1-3), Fazio wrote Buck a message over an instant messaging program, Slack, complaining about Sprunk's email: "I returned to a particularly nasty email from [Sprunk] telling me … that he had to do a ton more work because of me …. It was a very nasty exchange and I don't know how to feel about any of it." *Id.*, Ex. C; *see* Fazio Dep. Tr. 31:14-33:2. In response, Buck recommended to Fazio that she report Sprunk's email to Fazio's superior, Tucker Hall: "You really must let Tucker know about the nasty email. It is unprofessional ever to make another coworker feel terrible, even inadvertently, and I hope you will not put up with it." Macklin Decl., Ex. C. Fazio testified at deposition that, in writing her Slack message to Buck, she had not intended to convey that Sprunk had been sexually harassing her, and did not understand Sprunk's email to have been of that nature. Fazio Dep. Tr. at 37:16-24. Buck similarly testified that he did

not understand Fazio's Slack message to be complaining about sexual harassment. Buck Dep. Tr. at 41:21-42:22, 50:7-51:21.

While Fazio testified that she could not recall having any further conversations with Buck about Sprunk's behavior before Buck's eventual termination (Fazio Dep. Tr. at 44:16-47:9, 64:4-14, 82:17-83:15), Buck testified that he had two such conversations with Fazio over the phone. Buck Dep. Tr. at 51:22-52:14. In the first, according to Buck, Fazio "overtly declared … that she was being sexually harassed," and mentioned "inappropriate language, comments on her appearance during calls, words and jokes that made her very uncomfortable, she felt were inappropriate, sexual." *Id.* at 53:15-54:22. In response, he told Fazio that she was "right to be upset" and advised her to report Sprunk's behavior to Hall. *Id.* at 56:1-57:6. Buck testified that, in the second conversation, which took place shortly after the first, Fazio told him that she had decided against reporting Sprunk's behavior and asked Buck not to tell anyone about their conversations. *Id.* at 58:1-25. Buck, in response, advised her to report her complaints to Human Resources. *Id.*

Fazio testified that Buck was "pivotal" in encouraging her eventually to report her complaints about Sprunk to Human Resources. Fazio Dep Tr. at 83:25-84:10. To that end, on November 25, 2019, Fazio sent Michelle Hayes, Thycotic's Vice President of Human Resources, a letter detailing numerous instances in which, according to Fazio, Sprunk had violated the company's "Sexual and Other Unlawful Harassment and Discrimination" policy. Robert Fulton Declaration ("Fulton Decl.," Dkt. 23-2), Ex. C.[1] Fazio also included in her letter – along with

---

[1] While most of those instances related to comments Fazio perceived as sexual harassment, a few related to other types of behavior Fazio believed were inappropriate (*e.g.*, political comments about race). *See* Fulton Decl., Ex. C.

ORDER - 3

screenshots of eleven Slack exchanges between Fazio and Sprunk – a screenshot of her November 14 Slack exchange with Buck. *Id.*, Ex. C at 11. In addition, she explained in the letter:

> I had a private Slack conversation with a colleague about the email and expressed my concern about [Sprunk's] behavior towards me in this instance, and in personal slack discussions. While I did not provide details of the Slack conversations, I did let this colleague know that I felt like an island and very alone with no one to talk to.
>
> I asked this colleague to keep the conversation between he and I private. The colleague was proud of me for standing up for myself and said there have been 'occasional' instances where [Sprunk] has said obnoxious things on Slack channels ….
> I would like to keep this colleague anonymous as he is the only person I have felt comfortable speaking with ….

Fulton Decl., Ex. C at 10-11. Fazio and Hayes spoke later on November 25, during which time, according to Fazio's testimony and Hayes's declaration, Fazio identified Buck as the other individual participating in the November 14 Slack exchange. Hayes Decl. ¶¶ 7-8; Fazio Dep. Tr. 67:8-68:8, 81:8-82:16. Hayes declares – and no party disputes – that neither she nor anyone at Thycotic contacted Buck or otherwise involved him in investigating Fazio's complaint, which has since been resolved. Hayes Decl. ¶¶ 9-10.

On January 16, 2020, Buck's supervisor issued him a Performance Improvement Plan ("PIP")[2] for having "on more than one occasion provided incomplete documentation updates for product releases." Hayes Decl. ¶ 12, Ex. 4. The PIP lists, in addition to three such occasions of observed performance issues, various actions and goals intended to help Buck correct those issues. In response, Buck submitted an extensive "Rebuttal" denying the PIP's claims of inadequate performance, and stating that he "cannot sign the PIP due to thoroughly untruthful content that

---

[2] A PIP is, according to Thycotic's Employee Guide, a plan "requiring the employee's immediate and sustained corrective action" to address observed work performance or conduct issues. Hayes Decl., Ex. 2.

ORDER - 4

misrepresents my performance and entirely redefines my job duties." *Id.* ¶ 13, Ex. 5. Buck's employment with Thycotic was then terminated. *Id.* ¶ 14.

### B. Procedural History

Plaintiff filed this lawsuit on July 13, 2021, asserting claims for retaliation under Title VII and WLAD, as well as a claim for breach of contract. *See* Complaint ("Compl.," Dkt. 1). Defendant filed the Motion on August 17, 2021, seeking summary judgment on all of Plaintiff's claims. Plaintiff filed an opposition ("Opp.," Dkt. 23) and Defendant replied ("Rep.," Dkt. 24). On August 8, 2022, this case was reassigned to this Court.

### III. STANDARD OF REVIEW

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'" *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). A court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If there is not, summary judgment is warranted.

### IV. DISCUSSION

### A. Plaintiff's Retaliation Claims

Plaintiff's retaliation claims are premised on his allegations that he was issued a PIP, and eventually fired, because he "persuaded Ms. Fazio to report [Sprunk's] harassment to Human Resources." Compl. ¶ 19; *see id.*; ¶¶ 22-36; Opp. 4-8. To establish a prima facie case of retaliation under Title VII and WLAD, a plaintiff must show that (1) "he undertook a protected activity,"

ORDER - 5

(2) "his employer subjected him to an adverse employment action," and (3) "there is a causal link between those two events." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (articulating requirements under Title VII); *see Currier v. Northland Servs., Inc.*, 182 Wash. App. 733, 742 (Wn. Sup. Ct. 2014) (articulating same requirements under WLAD). Defendant contends that Plaintiff fails to demonstrate the first and third of these requirements. *See* Mot. at 11-16.

### 1. Whether Plaintiff Undertook a Protected Activity

To establish that he "undertook a protected activity" under Title VII, Plaintiff relies on the opposition clause of 42 U.S.C. § 2000e-3(a), which makes it unlawful "for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter." *See* Opp. at 5-6. To do so under WLAD, Plaintiff similarly relies on the opposition clause of RCW § 49.60.210(1), which prohibits employers from "discharg[ing] expel[ling], or otherwise discriminat[ing] against any person because he or she has opposed any practices forbidden by this chapter." *See* Opp. at 5-6. "In actions involving opposition of discriminatory conduct related to other employees' claims of discrimination," as Plaintiff brings here, the plaintiff "must actually support or encourage those other employees to file complaints of discrimination." *Heneage v. DTE Energy Servs., Inc.*, No. 3:11-cv-0686, 2018 WL 834598, at *4 (D. Nev. Feb. 10, 2018) (citation and quotation marks omitted). Further, under both Title VII and WLAD, the plaintiff's opposition can constitute a "protected activity" even if the employer's practices were not discriminatory, so long as his belief in the unlawfulness of those practices was reasonable. *See Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021) ("our precedents have long recognized that the statute protects an employee who opposes employer conduct in the mistaken but reasonable belief that the conduct is unlawful"); *Ellis v. City of Seattle*, 142 Wash. 2d 450, 460 (Wn. Sup. Ct. 2000) ("In the retaliatory

ORDER - 6

discharge context, Washington law has recognized a cause of action where an employee has an objectively reasonable belief an employer has violated the law.").

Defendant contends that the evidence demonstrates that Buck did not believe – reasonably or otherwise – that he was opposing discriminatory practices when he recommended to Fazio, during their November 14 Slack exchange, that she report Sprunk's November 12 email to Hall. *See* Mot. at 11-15. On this point, Defendant is correct. The November 14 Slack exchange lacks any indication that Fazio was complaining about, or Buck was recommending she report, sexual harassment or discrimination. *See* Macklin Decl., Ex. B. Moreover, as noted above, both Fazio and Buck testified that the November 14 Slack exchange did not relate to sexual harassment. *See* Fazio Dep. Tr. at 37:16-24; Buck Dep. Tr. at 41:21-42:22, 50:7-51:21. Therefore, this Court agrees with Defendant that the undisputed evidence shows that Buck's November 14 recommendation does not constitute an action undertaken to oppose a discriminatory practice.

However, there is evidence in the record that the November 14 Slack conversation was not the extent of Buck and Fazio's conversations about Sprunk's sexual harassment. As discussed above (*see supra* at 3), Buck testified that, following the Slack exchange, he had two conversations with Fazio during which she explicitly told him that she felt sexually harassed by Sprunk's "inappropriate language, comments on her appearance during calls," and "words and jokes that made her very uncomfortable." *See* Buck Dep. Tr. at 51:22-52:14, 53:17-54:22, 58:1-25. During each of those conversations, according to Buck, he advised her to elevate her complaints – first, to her manager, and then, to Human Resources. *See id.* at 56:1-57:6, 58:1-25. While Fazio did not recall those conversations having taken place, she testified that Buck was "pivotal" in encouraging her to report her complaints about Sprunk to Human Resources. *See* Fazio Dep Tr. at 83:25-84:10. The Court finds that, based on this evidence, a reasonable juror could conclude that Plaintiff

ORDER - 7

supported Fazio in reporting Sprunk's sexual harassment and that, by doing so, he had a reasonable belief that he was opposing a discriminatory practice. Accordingly, there is a genuine issue as to whether Plaintiff undertook a protected activity under Title VII and WLAD.

### 2. Whether Plaintiff Demonstrates a Causal Link Between His Actions and His Termination

"To establish a causal connection between opposition to employer conduct and a retaliatory action, the plaintiff must show 'the defendant was aware that the plaintiff had engaged in protected activity.'" *Maner*, 9 F.4th at 1127 (quoting *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003)). Both the Ninth Circuit and the Washington Supreme Court have "adopted the 'knew or suspected' standard" for determining whether defendants possessed the requisite awareness. *Black v. Grant Cnty. Pub. Util. Dist.*, No. 2:17-cv-365, 2019 WL 2617236, at *9 (E.D. Wash. June 26, 2019) (citing *Cornwell v. Microsoft Corp.*, 192 Wash. 2d 403, 417 (Wn. Sup. Ct. 2018), *Hernandez*, 343 F.3d at 1113), *rev'd in part on other grounds*, 820 F. App'x 547 (9th Cir. 2020). Accordingly, to establish causation under Title VII and WLAD, the plaintiff "must demonstrate the offending actor had actual knowledge of the protected activity or suspected the employee engaged in protected activity." *McMinimee v. Yakima Sch. Dist. No. 7*, No. 1:18-cv-3073, 2019 WL 11680199, at *14 (E.D. Wash. Aug. 7, 2019) (citation and quotation marks omitted); *see Minhnga Nguyen v. Boeing Co.*, 809 F. App'x 380 (9th Cir. 2020) (reviewing Title VII and WLAD retaliation claims under the "knew or suspected" standard).

Defendant contends that Plaintiff cannot establish a causal link between his protected activity (his advice to Fazio) and the adverse employment action (Thycotic's termination of his employment) in the absence of any evidence that Thycotic was aware that Buck encouraged Fazio to report what she perceived as Sprunk's sexual harassment. *See* Mot. at 15-16. Specifically, Defendant asserts that "[t]he only notice Thycotic received about Buck's 'involvement' was the

ORDER - 8

November 14 Slack conversation," which did not relate to sexual harassment. *See id.*; Rep. at 2-4. In response, Plaintiff argues that, given the nature of Fazio's letter to Human Resources, and her identification to Hayes of Buck as the colleague who encouraged her to formally complain about Sprunk (*see* Hayes Decl. ¶¶ 7-8; Fazio Dep. Tr. 67:8-68:8), "a trier of fact could reasonabl[y] infer that Thycotic's HR department suspected that Mr. Buck had participated and supported Ms. Fazio in opposing sexual harassment." Opp. at 8.

While Plaintiff's opposition does not demonstrate that Thycotic had actual knowledge that Buck encouraged Fazio to report her complaints about sexual harassment, the Court finds that there is sufficient evidence to create a genuine issue of fact as to whether Thycotic at least suspected it. It is true that the only specific conversation between Buck and Fazio identified in Fazio's letter was the November 14 Slack exchange (*see* Fulton Decl., Ex. C at 10-11), which Fazio and Buck testified did not relate to sexual harassment. *See* Fazio Dep. Tr. at 37:16-24; Buck Dep. Tr. at 41:21-42:22, 50:7-51:21. Moreover, Hayes declares that "Thycotic did not read that Slack conversation as being related to any sexual harassment complaint," and "Fazio did not disclose any other conversation she had with Buck." Hayes Decl. ¶¶ 9, 11. Further, the parties agree that Buck himself never disclosed any conversations with Fazio to Thycotic. *See id.* ¶ 9; Buck Dep. Tr. 69:25-70:7, 72:16-18. This evidence certainly supports Defendant's assertion that Thycotic was only aware that Buck had encouraged Fazio to report what she perceived to have been an inappropriate, but not discriminatory, email from Sprunk.

Nonetheless, a reasonable juror could infer from Fazio's letter that Thycotic suspected that Buck's conversations with Fazio extended beyond the November 14 Slack exchange, and included him supporting her to formally complain about sexual harassment. As an initial matter, Fazio's

ORDER - 9

letter references comments made by Buck that do not appear in the November 14 Slack exchange,[3] indicating that Fazio discussed her complaints about Sprunk's behavior with Buck on other occasions. Moreover, Fazio explained in her letter that Buck was "the only person I have felt comfortable speaking with" (*see* Fulton Decl., Ex. C at 10-11), which can fairly be interpreted as implying that Fazio had confided with Buck generally about the nature of her workplace difficulties. Finally, Fazio's letter makes clear – by relating Buck's comment that he "was proud of [Fazio] for standing up for [herself]," and his advice that she report Sprunk's November 12 email (*see id.*) – that Buck had been supportive of Fazio formally complaining about Sprunk. In light of the letter's description of Fazio's relationship and discussions with Buck, and given that the letter's purpose was primarily to report Sprunk's sexual harassment, a reasonable juror could infer that Fazio's letter caused Thycotic to suspect that Buck encouraged her to complain about sexual harassment.

"What-did-he-know-and-when-did-he-know-it questions are often difficult to answer, and for that reason are often inappropriate for resolution on summary judgment." *Hernandez*, 343 F.3d at 1113-14. Here, the Court finds that the question of whether Thycotic suspected that Buck encouraged Fazio to report Sprunk's sexual harassment is best reserved for the jury. Therefore, the Court rejects Defendant's contention that there is no triable issue as to causation on the ground that Thycotic lacked notice of Buck's protected activity. Accordingly, the Court declines to grant summary judgment to Defendant on Plaintiff's retaliation claims.

---

[3] For example, the letter's references to Fazio's request that Buck "keep the conversation … private," and Buck's comment that he "was proud of [Fazio] for standing up for [herself]," are not reflected in the Slack exchange. *See* Fulton Decl., Ex. C at 10-11.

ORDER - 10

### B.     Whether the PIP Constitutes an Enforceable Contract

Plaintiff asserts a claim for breach of contract premised on his allegations that Defendant "failed to adhere to the PIP contract." Compl. ¶¶ 37-42. Specifically, Plaintiff claims that Thycotic breached the PIP's "promise" to "give Mr. Buck an opportunity to correct the alleged 'problem areas'" by firing Buck immediately upon receipt of his Rebuttal. *Id.* In the Motion, Defendant contends that Plaintiff's breach of contract claim fails at the outset because the PIP did not constitute an enforceable contract. Mot. at 16-18. Defendant is correct.

Plaintiff does not dispute that he never actually agreed to the PIP, having refused to sign it. *See* Hayes Decl., Ex. 5 at 6. Plaintiff also does not dispute that his employment with Thycotic was "at will" and that, when he was hired, he signed a form acknowledging that Thycotic "may terminate [his] employment at any time for any reason, with or without cause or notice." Hayes Decl., Ex. 1; *see Burnside v. Simpson Paper Co*., 123 Wash. 2d 93, 104 (Wn. Sup. Ct. 1994) ("Generally, employment contracts indefinite as to duration may be terminated by either the employer or the employee at any time, with or without cause."). He argues, however, that the PIP "contractually modified" his at-will relationship with Thycotic by virtue of the actions and goals outlined therein for his job performance improvement. Opp. at 8-10; *see, e.g.*, Hayes Decl., Ex. 4 at 3 ("Weekly 1-on-1 meetings to review implemented process improvements."). In support of his argument, Plaintiff points to *Thompson v. St. Regis Paper Co*., 102 Wash. 2d 219 (Wn. Sup. Ct. 1984), wherein the Washington Supreme Court held that an "employer's act in issuing an employee policy manual" enunciating a "specific policy or practice" concerning the employment relationship can lead to obligations modifying the terminable at-will relationship. *Id.* at 229-30 (reasoning that "promises of *specific treatment in specific situations*" may induce an employee to remain on the job (emphasis in original)). There, the court found that the employer's policy

ORDER - 11

documents creating a probationary period for all employees, and stating that terminations "will be processed in a manner which will at all times be fair, reasonable and just," created such obligations. *Id.* at 222, 229-30.

The Court finds that the PIP did not create any contractual obligations modifying Thycotic's at-will employment relationship with Buck. Unlike in *Thompson*, the PIP did not introduce any "specific policy or practice" concerning the employment relationship. It purports only to set out a plan intended to help Buck improve his work performance, and contains no language guaranteeing him the opportunity to accomplish that plan or promising he would retain his job if he did so. *See* Hayes Decl., Ex. 4 at 3. Moreover, the Discipline Policy & Procedures section of Thycotic's Employee Guide, which sets out Thycotic's policy concerning the use and consequences of PIPs, expressly states:

> Nothing in this policy provides any contractual rights regarding employee discipline or counseling, nor should anything in this policy be read or construed as modifying or altering the employment-at-will relationship between Thycotic and its employees.

Hayes Decl., Ex. 2 at 3. As the court recognized in *Thompson*, employers will not be bound by statements in employment manuals if they "specifically state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship." *Thompson*, 102 Wash. 2d at 230. Having expressly stated that PIPs would not modify Thycotic's employment relationship with its employees, Thycotic made clear that the PIP issued to Buck would not lead to contractual obligations modifying their at-will relationship. Therefore, the Court finds that the PIP does not constitute an enforceable contract. Accordingly, the Court will grant Defendant summary judgment on Plaintiff's claim for breach of contract.

ORDER - 12

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment (Dkt. 20).  The Court grants summary judgment to Defendant on Plaintiff's claim for breach of contract, but declines to grant summary judgment on Plaintiff's retaliation claims under Title VII and WLAD.

SO ORDERED.

Dated:  September 1, 2022

_____
Barbara Jacobs Rothstein
U.S. District Court Judge